**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PATENT HOLDER IDENTIFIED IN EXHIBIT 1, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff Patent Holder Identified in Exhibit 1 complains against defendants The Individuals, Corporations, Limited Liability Companies, Partnerships, And Unincorporated Associations Identified On Schedule A To The Second Amended Complaint ("Defendants") as follows:

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.* and 28 U.S.C. §§ 1338(a), 1331.

2.     Personal jurisdiction exists over Defendants in this Judicial District because, upon

information and belief, Defendants regularly conduct, transact and/or solicit business in this Judicial District, and/or derive substantial revenue from business transactions in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

3.      Personal jurisdiction exists over Defendants in this Judicial District because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in this Judicial District, and/or derive substantial revenue from business transactions in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      In addition, Defendants' illegal counterfeiting and infringement actions cause injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this judicial District.

5.      For example, Defendant Internet Stores accept orders of counterfeit products from, and offer to ship such products to, Illinois addresses located in this Judicial District.

6.      Moreover, upon information and belief, Defendants are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts with online marketplace platforms such as Amazon, Walmart, Alibaba Express, eBay, Shein, Wayfair, Temu, NewEgg, Fruugo, DHgate, TikTok, and Wish, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and persons in active concert or participation with any of the foregoing. Consumers in the U.S., including Illinois (and more particularly, in this Judicial

District), can view the marketplace accounts that each Defendant operates, can communicate with Defendants regarding Defendants' listings for counterfeit products, can place orders for such counterfeit products, can purchase counterfeit products for delivery in the U.S., and can receive associated invoices.

7.      Defendants have transacted business with consumers located in the U.S., including Illinois (and more particularly, in this Judicial District), for the sale and shipment of counterfeit products.

8.      Venue is proper in this Judicial District because "a substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred" in this Judicial District. 28 U.S.C. § 1391(b).

## **INTRODUCTION**

9.      Plaintiff owns all rights of at least one U.S. Design Patent (the "Asserted Patent") and licenses others rights under the Asserted Patent. Those licensees design, manufacture, sell, and distribute unique products with innovative patented designs; total annual sales the Patented Products by Plaintiff's licensees exceed $1,000,000.

10.     Defendants seek to capitalize upon Plaintiff's patented technologies and designs by offering for sale and selling unauthorized and unlicensed infringing products (the "Infringing Products") embodying designs that infringe the Asserted Patent.

11.     On information and belief, Defendants design their Internet stores to appear to be selling genuine versions of the patented products, while they are actually selling Infringing Products to unknowing consumers.

12.     On information and belief, Defendants attempt to avoid liability by concealing both their identity and the full scope and interworking of their operations. Such efforts include changing the names of their stores numerous times, opening new stores, helping others open

stores, and making subtle changes to their Infringing Products.

13.     Plaintiff is thus forced to file this action to combat Defendants' infringement of the Asserted Patent, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet.

14.     Plaintiff has been, and continues to be, irreparably harmed by Defendants' infringement of Plaintiff's Asserted Patent. Plaintiff, therefore, seeks injunctive relief to halt such infringement and irreparable harm.

15.     Plaintiff also seeks monetary relief for the injury that she is sustaining.

## THE PARTIES

### A. Plaintiff

16.     Plaintiff is an innovator residing overseas with a principal place of business located overseas.

17.     Plaintiff's licensees market and sell high-quality, innovatively designed, products that embody the designs claimed in the Asserted Patent (the "Patented Products"). A true and correct copy of the Asserted Patent is attached hereto as **Exhibit 1**.

### B. Defendants

18.     Defendants are individuals and business entities who reside in foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of the Infringing Products using counterfeit and infringing versions of Plaintiff's patented designs as claimed in the Asserted Patent. Each Defendant has targeted the United States, including Illinois specifically, by selling or offering for sale, or knowingly assisting in the selling or offering for sale, Infringing Products to U.S. consumers, including consumers located in Illinois, via various online stores.

19.     Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine versions of the Patented Products, while they are actually selling inferior, unauthorized imitations of the Patented Products. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar counterfeit products that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operations make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will amend or seek leave to amend the Complaint.

20.     Defendants manufacture, advertise, offer for sale, sell, import, and distribute the Infringing Products.

21.     The Infringing Products incorporate unauthorized, infringing versions of Plaintiff's patented design claimed in the Asserted Patent.

**THE ASSERTED PATENT**

22.     The Asserted Patent was duly issued by the United States Patent and Trademark Office. Plaintiff owns the Asserted Patent.

23.     The Asserted Patent is directed to an ornamental design for a product. Plaintiff licenses rights under the Asserted Patent to licensees who practice the inventions claimed in the Asserted Patent.

24.     The commercial products embodying the designs claimed in the Asserted Patent have been commercially successful. Sales of the Patented Products by Plaintiff's licensees collectively amount to over $1,000,000 annually.

25.     Plaintiff's licensees market the Patented Products through such on-line retain channels as Amazon.

26.     The design of the Patented Products differentiates such products from those of competitors.

27.     The Asserted Patent is currently unexpired, valid, and enforceable.

28.     Plaintiff is the lawful owner of all right, title, and interest in each of the Asserted Patent.

29.     Plaintiff has not granted Defendants a license and has not otherwise granted Defendants permission to make, use, sell, offer to sell, or import the products or other items embodying the designs claimed in the Asserted Patent.

**DEFENDANTS' INFRINGEMENT OF THE
ASSERTED PATENT**

30.     The commercial success of the Patented Products has resulted in significant infringement of Plaintiff's Asserted Patent. Consequently, Plaintiff has recently instituted a worldwide program to investigate suspicious online marketplace listings. In recent years, Plaintiff has identified hundreds of fully interactive, commercial Internet stores on various e-commerce platforms, which are offering for sale to consumers, in this Judicial District and throughout the United States, products that infringe Plaintiff's intellectual property rights.

31.     Internet websites such as those used by Defendants to sell Infringing Products are estimated to receive tens of millions of visits per year and generated over $509 billion in annual online sales in 2016 alone. *See* Report from the U.S. Department of Homeland Security to the

President of the United States, COMBATING TRAFFICKING IN COUNTERFEIT AND
PIRATED GOODS,

published January 24, 2020 (available at

https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-
report_01.pdf).

32.     According to an intellectual property rights seizures statistics report issued by the
United States Department of Homeland Security, the aggregate manufacturer's suggested retail
price ("MSRP") of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion.
(*See* **Exhibit 2** at 2).

33.     E-commerce retail platforms such as those used by Defendants do not adequately
subject new sellers to verification and confirmation of their identities, allowing infringers to
regularly use false names and addresses when registering with these e-commerce retail platforms.

34.     Defendants facilitate sales of the Infringing Products by designing their on-line
storefronts so that they appear to unknowing consumers to be authorized online retailers, outlet
stores, or wholesalers. Defendants' online storefronts appear sophisticated and accept payment in
U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal.

35.     On information and belief, Defendants operate multiple credit card merchant
accounts and PayPal accounts behind layers of payment gateways so that they can continue
operating in spite of enforcement efforts.

36.     Defendants often include on their on-line storefronts content and images that make
it very difficult for consumers to distinguish such stores from an authorized retailer.

37.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7"
customer service and using indicators of authenticity and security that consumers have come to
associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®,

MasterCard®, and PayPal® logos.

38.     On information and belief, Defendants have engaged in fraudulent conduct when registering their on-line storefronts by providing false, misleading, and/or incomplete information to Amazon, eBay, Wayfair, Temu, DHgate, Wish, Walmart, TikTok, Temu, and potentially other on-line platforms.

39.     On information and belief, Defendants have anonymously registered and maintained aliases to prevent discovery of their true identity and the scope of their e-commerce operation.

40.     On information and belief, Defendants also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.

41.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products on such e-commerce platforms as Amazon, eBay, Wayfair, Temu, DHgate, Wish, Walmart, TikTok, and Temu. On information and belief, such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identity and the full scope and interworking of their operation, and to avoid being shut down.

42.     Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operating in spite of enforcement efforts. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

43.     Analysis of financial account transaction logs from previous similar cases indicates

that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

44.    Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court.

45.    On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment that they may be liable for due to their infringement of intellectual property rights.

46.    Upon information and belief, prior to and contemporaneous with their counterfeiting and infringement actions alleged herein, Defendants had knowledge of the popularity and success of the Patented Products, and in bad faith proceeded to make, use, offer for sale, sell, and/or import the Infringing Products.

47.     Defendants have been engaging in the illegal counterfeiting and infringement actions alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's patent rights, and otherwise in bad faith.

**COUNT I**
**DESIGN PATENT INFRINGEMENT**

48.    Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.    Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the Asserted Patent.

50.    In the eye of an ordinary observer, the design of Defendants' Infringing Products and the designs claimed in the Asserted Patent are substantially the same. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to

have come from Plaintiff.

51.     Defendants' Infringing Products misappropriate the novelty of the designs claimed in the Asserted Patent that distinguished Plaintiff's patented designs from the prior art.

52.     Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental designs claimed in the Asserted Patent.

53.     Defendants have infringed each of the Asserted Patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

54.     Defendants' infringement of Plaintiff's Asserted Patent has been willful.

55.     Defendants' infringement of Plaintiff's Asserted Patent has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Asserted Patent.

56.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

57.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

58.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

(1)     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be

permanently enjoined and restrained from:

    (a)    making, using, importing, offering for sale, and selling any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the designs claimed in the Asserted Patent;

    (b)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

    (c)    aiding, abetting, contributing to, or otherwise assisting anyone in infringing the Asserted Patent.

(2)    Directing that Defendants deliver for destruction all products that include the designs claimed in the Asserted Patent as well as all means for making such designs.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

    (a)    Locate all accounts connected to Defendants, including, but not limited to, any Amazon, Walmart, Alibaba Express, eBay, Shein, Wayfair, Temu, NewEgg, Fruugo, DHgate, TikTok, and Wish accounts;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by

defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, including, without limitation, Amazon, Walmart, Alibaba Express, eBay, Shein, Wayfair, Temu, NewEgg, Fruugo, DHgate, TikTok, and Wish, with whom such newly identified accounts are maintained, to carry out the following activity:

(a) Locate all accounts connected to Defendants, including, but not limited to, any Amazon, Walmart, Alibaba Express, eBay, Shein, Wayfair, Temu, NewEgg, Fruugo, DHgate, TikTok, and Wish accounts;

(b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patent, and awarding Plaintiff all of the profits realized by Defendants, or others acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of the Asserted Patent.

(6) Awarding Plaintiff all other damages that it may be entitled to under applicable law.

(7) Awarding Plaintiff its costs in bringing this action.

(8) Awarding Plaintiff any further relief that this Court deems just and proper.

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Date: October 28, 2024                                         Respectfully submitted,

 

 

_____

Zheng "Andy" Liu (CA # 279327)
Jingyi Guo (CA # 335448)
1660 South Amphlett Blvd. Suite 315
San Mateo, CA 94402
Tel.: (650) 475-6289
Email: Andy.Liu@AptumLaw.us
Jingyi.Guo@AptumLaw.us
*Attorneys for Plaintiff*

13